UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAY BRADSHAW,

                      Plaintiff,

        - against -

THE CITY OF NEW YORK, DORA SCHRIRO,
LARRY WILSON, CAPTAIN JOHN DOES 1–30,
New York City Department of Corrections—
Emergency Service Unit, OFFICER JOHN DOES
1–120, New York City Department of
Corrections—Emergency Service Unit, and
CAPTAIN JOHN DOE 1, Green Haven
Correctional Facility,

                      Defendants.

**OPINION AND ORDER**

15 Civ. 4638 (ER)

Ramos, D.J.:

       Jay Bradshaw ("Bradshaw" or "Plaintiff") brings this action under 42 U.S.C. § 1983 ("Section 1983") alleging violations of his Fourth and Eighth Amendment rights. *See* Compl. (Doc 1).

       On February 9, 2018, the Court partially granted the City of New York's motion for summary judgment. The Court terminated three defendants—Defendants Dora Schriro, Larry Wilson, and Captain John Doe 1. *See* Doc. 98. It also determined that, of the sixty allegedly unconstitutional strip searches Bradshaw was subjected to, Defendants were entitled to judgment as a matter of law on fifteen searches, searches that were irrefutably conducted for a penological purpose and not to punish or humiliate Bradshaw. *Id.* at 13–14. The Court found that a reasonable jury could conclude that the remainder of the strip searches, all of which were the second or third strip search of Bradshaw on the day in question, violated Bradshaw's Fourth Amendment rights. *Id.* at 9–12. The Court also found that Defendants were not entitled to

qualified immunity because a jury could conclude that would be unreasonable for a corrections officer to conduct a subsequent strip search in light of the continuous surveillance of Bradshaw following his initial strip search. *Id.* at 12 n.8. Defendants now move for reconsideration, arguing that the Defendants are entitled to qualified immunity for all of the conduct alleged in Bradshaw's complaint. *See* Doc. 100.[1] For the reasons stated herein, Defendants' motion is DENIED.

I.  **LEGAL STANDARD**

Rule 6.3 of the Local Civil Rules for this District provides for reconsideration of a court's order on a motion only where the court has overlooked controlling decisions or factual matters that were "put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (quoting *Greenwald v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003)); *see also* Local R. 6.3. Under such circumstances, a motion for reconsideration may be granted "to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted). "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Local Rule 6.3 is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Mikol*, 554 F. Supp. 2d at 500 (internal quotation marks omitted) (quoting *Dellefave*

---

[1] The Court has received a letter from Bradshaw requesting the opportunity to file a late response to Defendants' motion. Doc. 104. Because the Court denies the motion, Bradshaw's request is denied as moot.

2

*v. Access Temps., Inc.*, No. 99 Civ. 6098 (RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001)). "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Id.* (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Whether to grant or deny a motion for reconsideration lies within the sound discretion of the district court. *Premium Sports Inc. v. Connell*, No. 10 Civ. 3752 (KBP), 2012 WL 2878085, at *1 (S.D.N.Y. June 11, 2012) (citing *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

## II. DISCUSSION

Defendants argue that the Court should have found that they were entitled to qualified immunity because the cases on which the Court relied, *Vasquez v. Williams*, *Turkmen v. Hasty*, and *N.G. ex rel. S.C. v. Connecticut*, are factually distinguishable and/or "apply inconsistent legal analyses." *See* Defendants' Memorandum of Law in Support of their Motion for Reconsideration ("Recons. Mem.") (Doc. 100) at 4. In essence, Defendants argue the Court applied these precedents incorrectly, or that it should not have been persuaded by the analysis in these cases at all. However, a motion for reconsideration "is not a substitute for appeal." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005), *aff'd sub nom Tenney v. Credit Suisse First Boston Corp.*, No. 05-3430, 2006 WL 1423785 (2d Cir. May 19, 2006) (quoting *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 207 F. Supp. 2d 292, 296 (S.D.N.Y. 2002)). "Misapplication of the law . . . is a ground for appeal, not reconsideration." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 609 (S.D.N.Y. 2012) (collecting cases). At the outset, then, the Court notes that the proper vehicle for Defendants' disagreement with its decision is appeal.

Further, upon consideration of Defendants' specific arguments as to why the Court misapplied or was wrongly persuaded by *Vasquez*, *Turkmen*, and *N.G.*, the Court finds that reconsideration is not appropriate.

First, Defendants argue that *Vasquez* and *Turkmen* should not have been considered because they were decided in 2015, years after the strip searches in question were conducted. *See* Recons. Mem. at 3. Defendants misunderstand the Court's citation to *Vasquez* and *Turkmen*. *Vasquez* was not the first case to clearly establish that a corrections officer must have a penological purpose in conducting a strip search, especially when an inmate has been under continuous surveillance since an earlier strip search that same day. Rather, *Vasquez* found that officers who conducted such strip searches as early as 2012 (a year before the relevant conduct in this case) were not entitled to qualified immunity in 2015. *See Vasquez v. Williams*, No. 13 Civ. 9127 (LGS), 2015 WL 4757657 (S.D.N.Y. Aug. 11, 2015). In other words, *Vasquez* applied principles that were already clearly established to conduct that occurred even before the conduct in this litigation. Similarly, in *Turkmen*, the Second Circuit determined that by September 11, 2001, it was "clearly established" that strip searches must be rationally related to legitimate government purposes. *See Turkmen v. Hasty*, 789 F.3d 218, 261–62 (2d Cir. 2015), *rev'd in part on other grounds sub nom. Ziglar v. Abasi*, 17 S. Ct. 1843 (2017). Both cases, in turn, pointed to *Hodges v. Stanley*, in which the Second Circuit, in a per curiam decision, considered yet another similar factual pattern and concluded that the plaintiff had stated a constitutional challenge:

> Hodges' challenge is not to the validity of predetention searches per se, but instead to the need for a *second* search. The second search took place shortly after the first, and Hodges had been under continuous escort. Under these circumstances it seems clear that there was no possibility that Hodges could have obtained and concealed contraband. Thus the second search appears to have been unnecessary. We therefore cannot say that Hodges has failed to state a constitutional claim.

4

*Hodges v. Stanley*, 712 F.2d 34, 35–36 (2d Cir. 1983).[2] The Court therefore is not persuaded by Defendants' argument that because *Turkmen* and *Vasquez* were published after the conduct at issue in this case, "the law regarding the alleged strip searches herein was not clearly established." Recons. Mem. at 4. *Turkmen* and *Vasquez* both denied qualified immunity to officers for conduct that predated the conduct in this case, and both relied on earlier Second Circuit cases explaining the constitutional problems presented by successive strip searches.

Second, Defendants argue that all three cases are too factually dissimilar from Bradshaw's strip searches to clearly establish that Defendants' conduct was unlawful. *See* Recons Mem. at 4. Defendants argue that none of the cases relied upon by the Court specifically held that:

> [A]n adult, convicted and sentenced inmate had the right to be free from subsequent strip searches (1) conducted upon the inmate being transferred to the custody of another correctional institution and/or (2) conducted several hours after an earlier strip search after such inmate has been exposed to other inmates and individuals outside of the correctional facility, even where the inmate alleges that he could not have obtained contraband between searches.[3]

---

[2] Defendants point to Judge Raggi's dissent in *Turkmen*, in which she argued that "*Hodges* . . . was decided before *Turner* and *Covino*. Thus, courts cannot assume that its 'no possibility' to obtain contraband conclusion invariably equates to the required showing of no rational relationship to a legitimate government purpose." Recons. Mem. at 8; *Turkmen*, 789 F.3d at 301 (Raggi, *J.*, dissenting). But Judge Raggi went on to contrast *Hodges* with *Turkmen* by noting that in *Hodges*, there were successive strip searches in a short time frame, while in *Turkmen,* the plaintiffs complained of "random" strip searches and "required strip searches in circumstances involving intervening events— e.g., before and after non-contact visits." *Id.* at 301. If anything, then, Judge Raggi's dissent appears to recognize the constitutional significance of successive strip searches like the ones in this case, which were almost all conducted in the absence of intervening contact or non-contact visits.

[3] The Court also notes that the record does not indicate that while Bradshaw was at Bronx Criminal Court, he was "exposed to other inmates"—both parties represented in their 56.1 statements that Bradshaw was placed in a segregated cell apart from other inmates. *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Doc. 94) at 2; Defendants' Statement of Undisputed Facts (Doc. 83) ¶¶ 35–37. Further, Bradshaw was handcuffed and under continuous escort during the times he left his isolated cell. *See* Declaration of Megan Conger (Doc. 96) Ex. A (Bradshaw Dep.) at 93:25–94:24. The record before the Court indicates only one non-contact visit, which took place between Bradshaw and his attorney on September 3, 2013. *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Doc. 94) ¶109.

5

Recons. Mem. at 3. Defendants point to *District of Colombia v. Wesby*, in which the Supreme Court reiterated that the "clearly established" standard "requires a high degree of specificity" and that it must be "clear to a reasonable officer that his conduct was unlawful." *Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotations omitted). But qualified immunity "does not require a case directly on point for a right to be clearly established." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Instead, it requires that "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* at 1153 (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)). Although Defendants point to certain factual differences between Bradshaw's searches and the searches in *Vasquez*,[4] *Turkmen*,[5] and *N.G.*,[6] the Court finds that

---

[4] For example, Defendants argue that *Vasquez* is distinguishable because in *Vasquez*, the plaintiff was transferred among institutions all within the purview of the City of New York, while in this case, Bradshaw was transferred between a New York state facility and a New York City facility. Recons. Mem. at 5. *Vasquez* does not draw this distinction, and in both *Vasquez* and *N.G.*, the inmates or confined individuals were transferred between facilities. In *N.G.*, the Second Circuit noted that while it might be more "convenient" for the personnel at the second facility to conduct a second strip search, "mere convenience . . . cannot be a sufficient interest to justify such a serious impairment of privacy." *N.G. v. Connecticut*, 382 F.3d 225, 234 (2d Cir. 2004). Defendants also argue that *Vasquez* misapplies the law because it is the plaintiff's burden to show that the strip search lacked a rational relationship to any penological purpose. Recons. Mem. at 6–7. Defendants argue that here, Bradshaw cannot meet that burden because his complaint does not refer to the initial strip searches at Greenhaven. *Id.* at 2 n.1. However, Bradshaw details his allegations about the initial strip searches in his opposition, and he cites to admissible evidence in the form of his deposition. *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Doc. 94), at 1. When a plaintiff proceeds pro se, the Court may rely on opposition papers in assessing the legal sufficiency of the claims. *Henning v. New York City Dep't of Corr.*, 2016 WL 297725, at *3 (quoting *Rosado v. Herard*, No. 12 Civ. 8943 (PGG) (FM), 2013 WL 6170631, a *2 (S.D.N.Y. Nov. 25, 2013)). Further, a court must afford special solicitude to pro se litigants confronted with motions for summary judgment. *See Fawemimo v. Am. Airlines, Inc.*, No. 14 Civ. 4510 (PKC), 2017 WL 398387, at *1 (citing *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)). Finally, the Court notes that Defendants did not raise this argument in its opening or reply papers in support of their motion for summary judgment, despite the fact that they were aware of Bradshaw's arguments with respect to "subsequent" strip searches. *See* Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. 95) at 7.

[5] With respect to *Turkmen*, Defendants argue that the plaintiffs in that case never left the prison facility and that the strip searches were "part of larger conditions of confinement allegations." Recons. Mem. at 7. As discussed above, courts in this Circuit have found that subsequent strip searches may violate the Fourth Amendment even when a confined individual has been transferred among facilities. Second, although the *Turkmen* plaintiffs alleged a wider array of unlawful conduct, their strip search claim (Claim 6) was independent of the unconstitutional conditions claim (Claim 1). *Turkmen*, 789 F.3d at 232, 259–62.

[6] Defendants argue that in *N.G.*, the Second Circuit "heavily weighted" the fact that the plaintiffs were minors. Recons. Mem. at 9. But both prior and subsequent cases determined that successive strip searches could violate an

6

each of those cases established or applied the principle that conducting successive strip searches is not reasonably related to a legitimate penological interest if they are conducted "when there was no possibility that [the inmate] could have obtained contraband." *Vasquez*, 2015 WL 4757657, at *4 (quoting *Turkmen v. Hasty*, 789 F.3d at 260)); *see also Hodges*, 712 F.2d at 35–36; *N.G. v. Connecticut*, 382 F.3d 225, 234 (2d Cir. 2004) ("[T]he State's opportunity to maintain surveillance during custody after an initial strip search, in addition to the availability of other search techniques, renders unreasonable a subsequent strip search in the absence of reasonable suspicion of possession of contraband."); *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (same). The Court therefore finds that the conduct at issue here is sufficiently similar to the conduct at issue in prior cases that a jury could find that Defendants' violated Bradshaw's clearly established Fourth Amendment rights.

### III. CONCLUSION

Defendants' motion for reconsideration is DENIED. The parties are directed to appear for a status conference on May 29, 2018 at 10:30 a.m. The Clerk of Court is respectfully directed to terminate the motion (Doc. 100) and to mail a copy of this order to Bradshaw. It is SO ORDERED.

Dated: April 18, 2018
       New York, New York

                                            Edgardo Ramos, U.S.D.J.

---

incarcerated adult's Fourth Amendment rights if there were no possibility that the individual could have obtained contraband. *E.g.*, *Turkmen*, 789 F.3d at 260; *Hodges*, 712 F.2d at 35–36.

7